Good morning, Your Honors. Amy Field on behalf of Defendants and Appellants, James Carroll and Michael Segarra. Although it is clearly established that it's unlawful to deliberately fabricate evidence to another officer, the key to that determination is whether the misrepresented facts are material to or cause the plaintiff's alleged constitutional injury. Why isn't that a causation question, which is a factual question, which is not something that was intended to be appealed by allowing interlocutory appeals on qualified immunity? Because causation in the context of a 1983 action is an essential element of the claim. Plaintiffs have to prove. CARROLL It certainly is, but I guess the problem I'm having is that qualified immunity is allowed to be appealed on an interlocutory basis because of a determination that an officer shouldn't have to face suit if he's faced with some constitutional decision that is reasonable. He makes a reasonable decision. He's not subject to suit. It seems to me here we're talking about just a regular causation question. Did the conduct of the officers cause the search or entry to take place? It doesn't seem to me that that's an interlocutory issue on which there can be an appeal. FIELD Well, obviously, I respectfully disagree, Your Honor. I think that this is precisely the kind of issue that should be raised on an interlocutory appeal from a denial of qualified immunity. We're looking at this officer's conduct, which is even further removed than we're typically looking at where the officer is actually the direct tortfeasor. He's the one who made the arrest. He's the one that used the force. In this case, we're talking about somebody that's even further removed from that conduct. Kennedy But there's no question that if you assume the plaintiff's version of the facts, that he did something that was clearly unconstitutional. FIELD On that point, I disagree, Your Honor. I think that even if you assume the plaintiff's version of the facts, that when Kim Kilpatrick came to the back door of his house and looked out and saw the police and turned around and went back in, he did not, as Officer Segarra said, run back in and slam the door, but simply turned around and walked back in. Even accepting the plaintiff's version of the facts by misrepresenting these facts to Sergeant Rakitis's belief that, A, there was probable cause to believe the suspects were in the building. I don't think so. There was probable cause to believe that, independent of whether Segarra said they ran back in and slammed the door, whether they simply walked back in and closed the door, and, B, whether these misrepresentations were material to Rakitis's belief that they were exigent circumstances. And on this point, I think there's absolutely no evidence that there was anything that Segarra said that could have led Rakitis to believe that there were exigent circumstances. KAGAN Isn't this, as you frame that about no evidence, and there are obviously inferences from the plaintiff's facts, this sounds a lot like the Collins case where there was, quote, no evidence and there was  In that case, we said, well, on those points, you might win in the end, but it's not appropriate for an interlocutory appeal. So going back to Judge White's initial inquiry, how would you distinguish this from Collins, in which we said we didn't have jurisdiction? WARREN I'm drawing a blank on what the facts were in Collins. That was where the mayor, okay, well, let me just phrase it in a more general sense. I mean, in cases where the real issue is this causal connection, we basically said that's not the kind of case that comes up here for interlocutory review. I mean, we don't have jurisdiction over that, because it just seems to me that you phrase it as materiality, but the bottom line, it seems to me, to be causation is what you're disputing. Am I wrong about that? WARREN I think I'm disputing both. I think I'm disputing whether the misrepresentations were material enough to be the cause of Sergeant Rikides' belief that there was probable cause and exigent circumstances that justified the entry. And I ---- Sotomayor Are you familiar, counsel, with the Gowden case? WARREN I'm sorry? Sotomayor Are you familiar with the Gowden case? WARREN I am not, Your Honor. It's a Supreme Court case which held really kind of a sea change in the law that materiality goes to the jury. Sotomayor In the question of qualified immunity? WARREN That was a case. It didn't involve qualified immunity. But here, if the case is materiality, as you suggest, I think that the jury would need to decide that. And if it's causation, there's also a great deal ---- What would we have to find here? We would have to find that out of disputed facts, that they didn't rely on this ---- these officers' statements. And that's really a factual issue. WARREN I think what the Court needs to do is resolve the disputed facts in the plaintiff's favor. I mean, we all agree on that, and accept that Kim Kilpatrick simply came to the back door, looked out, saw the officers, and turned around and went back inside. We need to resolve that in his favor. Sotomayor The disputed facts that I'm referring to are, if you read these depositions of the officers and of the one who maybe ordered the swap team, what were the ---- what was he relying on? You assume that it was a lie, and then there was testimony that would suggest that he relied on that in calling the swap team. And there is some evidence possibly to the contrary, but this is all factual. I don't think there ---- I don't think he ever said that he relied on this difference in characterization in his decision to call the swap team. I think he said he relied on his own background, training, and experience. I mean, he may not have used those words. Ginsburg But if you will read those depositions again, counsel, you'll see that he did at one point say that he relied on that. WARREN Well, I think that then it becomes an objective question. I mean, subjectively, maybe he did. But objectively, should Officer Segarra have foreseen that if I tell my commanding officer I saw Kim Kilpatrick slam the door versus close the door, I saw him run back inside versus walk back inside, should I be able to foresee that this is the kind of misrepresentation of facts that's going to cause a reasonable commanding officer to draw from those facts and believe that exigent circumstances warrant less entry into the house? It's not like, you know, I think this would be a very ---- Kagan You're focusing on just the question of whether he went out and then saw the police and ran, or whether he sauntered out to, I guess, put something in the garbage can and come back. But what about the information conveyed that this was a barricade or a hostage situation? That ---- WARREN But Officer Segarra ----  WARREN Oh, I'm sorry. Thank you. It seems to me that information that rises to that level where the other officer interprets it as being that state of affairs is a far cry from just a question of did you walk or saunter back to the house. And ---- Kagan My response to that, Your Honor, is that Officer Segarra never said anything about there being a barricaded hostage situation. I think it would be a completely different situation if he had told his sergeant, I saw him holding a gun to someone's head. I was getting 911 calls that people were inside a trap. But there was nothing that Segarra said to Rakitis that would have led a reasonable person to believe that there was a barricaded hostage situation. He simply reported, I saw someone matching the suspect's description come out the back door and then go back inside. That's what he reported to his sergeant. From that, his sergeant, on his own, seems to draw the conclusion that this might be a barricaded hostage situation. But we're looking at Segarra's conduct. Did he say something? It's not like the Harris v. Roderick case where the officers clearly misrepresented the facts and said that the ---- they were not the aggressors, that the plaintiff was the aggressor in the first series of firing. I mean, any officer would know if you report to your superior, he opened fire on me, the superior is going to think the person is armed and dangerous and presents this kind of threat. Segarra didn't make those kind of misrepresentations. He never said anything to his sergeant that would have led anyone to believe that there was a barricaded hostage situation. He said, I saw the suspect at the back door. He went back inside. That's what he said. Do you want to reserve the remaining time? Sure. Thank you, Your Honor. Good morning, Your Honors. Bernadine Zemmegeson for the appellees. I'd like to start with pointing out simply that Johnson v. Jones states very specifically that in order to be appealable, a ruling such as this type has to have turned on an issue of law. And it's very clear from both of the pleadings on both sides, all the pleadings on both sides, that the appellants also can see that there is no issue of law here. If an officer is to lie in providing evidence of probable cause, it's clearly illegal and unconstitutional. As Your Honors have already pointed out, the issues that remain are issues of fact, of whether or not individual officers were believable, whether or not they caused their sergeants. Let me see if I can phrase this question to make sense. Let's assume that there are no facts that show a causation between the alleged lie and the entry. But the judge denies the motion for summary judgment on qualified immunity. Would it be appealable? If there was no evidence of causation, I believe it would not be appealable because the issue of law would still be clear. That lying was a constitutional violation? Yes, Your Honor. Okay. Thank you. And I actually have nothing more at this moment. I will reserve my extra time. Well, you won't get another chance. Oh, okay. If you have anything else you want to say, now is the time. There actually is not a whole lot. Usually you're on the other side of things. I know, and I don't even know what to do with myself today. Generally, I think our general argument is that I could not find anything that would show that the judge's order was turning on an issue of law versus an issue of fact. She says it again and again. She had, I think, a 42- or 43-page order in which she says again and again that this was an issue of sufficiency of the evidence and causation. Thank you, Your Honors. Thank you. Just briefly, I think the answer to Your Honor's question is that, yes, it would be right for interlocutory appeal if there was no evidence whatsoever of causation. I think that is the legal determination. I think the factual determination that the district court made was that there was a dispute of fact that the district court identified was what Kim Kilpatrick did on the back porch. That was the factual dispute. I think the legal issue the district court decided was did these facts, viewing the facts most favorably to the plaintiff, add up to causation? And she found that they did, but she found it as a matter of law. We're appealing this finding that she made as a matter of law, and we're saying as a matter of law these facts do not add up to causation, actual or legal causation. And I think this is a perfect case for an interlocutory appeal on qualified immunity. These two officers are going to have to go to trial on their conduct. What was their conduct? Accepting the truth of plaintiff's allegations that they misrepresented in a very immaterial way what happened on that back porch. And so they're going to be potentially held liable in their individual capacity for their commanding officer's decision to make a warrantless entry into this house when there was nothing that they said that would have led their sergeant to believe that there were barricaded suspects in the house. This is something he came up with on his own. They're the low-level officers. Their boss decided to do something, not based on what they said, based on what he thought. And I think this is a perfect case where these officers should not be faced with the burden of trial. Counsel, what the officer said was that after hearing these facts, then ran back into the house and possibly creating what we called a barricaded situation. So he interpreted it as a barricaded situation. But he didn't say he interpreted it based on what, on the purported misrepresentation. Well, he said he relied on what Segura said. You know, and even if subjectively he did, objectively, objectively speaking, would an officer know that? What I know, if I tell the facts as I told them, that this is going to cause my boss, my superior officer to take this leap and draw from what I said, that there must be a barricaded hostage in the house. Or there is likely one. I don't think so. I just don't think there's any evidence there. And I think that's a legal issue that must be determined on interlocutory appeal by this Court. Thank you. Thank you. The case of Kilpatrick v. Carroll is submitted.
judges: B. Fletcher, McKeown. Whyte